## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marwan Handsome,<br><br>            Petitioner,<br><br>v.<br><br>Conrad M. Graber,<br><br>            Respondent. | No. CV-13-01711-PHX-JAT (BSB)<br><br>**REPORT AND RECOMMENDATION** |

Marwan Handsome (Petitioner) has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Petitioner claims that the loss of his good time credits violated due process. Respondents have filed a Response arguing that Petitioner's claim lacks merit. (Doc. 8 at 6.) Petitioner has replied. (Doc. 10.) For the reasons set forth below, the Petition should be denied.

**I.     Background**

    **A.     Guilty Plea and Sentence**

On September 9, 2010, Petitioner pled guilty to violating 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. (Doc. 8, Ex. A; Doc. 8-1 at 8.)[1] He was sentenced to a term of eighty-four months' imprisonment, followed by three years' supervised release. (*Id*. at 9-10.) Petitioner began serving his sentence at Federal Correctional Institution-

---

[1] Exhibit A to Respondent's Answer is the Declaration of Catherine Smithers. There are several attachments to the Smithers declaration. For ease of reference, the Court uses the CM/ECF document (Doc. 8-1) and page numbers to refer to the Smithers declaration and the attachments.

Gilmer (FCI-Gilmer) in Glenville, West Virginia, and is currently incarcerated at Federal Correctional Institution-Phoenix (FCI-Phoenix) in Phoenix, Arizona. (Doc. 1 at 1.) Petitioner has a projected release date of January 23, 2016. (Doc. 8-1 at 15.)

### B. The Petition for Writ of Habeas Corpus

In the pending habeas petition, Petitioner raises one ground for relief asserting that his due process rights were violated during disciplinary hearings because the reporting officer falsified the date of the initial report, and he was convicted of the violation despite presenting witness testimony that he did not commit the offense.[2] (Doc. 1 at 1.) As a result, Petitioner lost twenty-seven days of good time credits. (Doc. 8-1 at 25.) Petitioner asks the Court to expunge the incident report and restore his good time credits. (Doc. 1 at 9.)

## II. Petitioner's Due Process Claim

### A. The Disciplinary Proceedings and Administrative Appeals

On July 5, 2011, FCI-Gilmer officials initiated disciplinary proceedings against Petitioner after he was involved in an incident with a correctional officer. (Doc. 8-1 at 19.) According to the correctional officer, Petitioner walked up a stairwell, approached the officer in a "threatening manner" and asked, "What would you do if I just knocked your ass out?" (*Id*.) The correctional officer reported the threat to the Operation Lieutenant and wrote an incident report the same day. (*Id*. at 19, 23.) The incident report charged Petitioner with violating Code 203, Threatening Another with Bodily Harm. (*Id*. at 20.) The correctional officer, however, did not sign the report. (*Id*. at 4) The incident report was "suspended" to await the correctional officer's signature. (*Id*.)

The correctional officer signed the report on July 11, 2011, and the report was released to a lieutenant to investigate the incident. (*Id*. at 20.) The lieutenant delivered the incident report to Petitioner, advised Petitioner of his rights, and conducted an interview. (*Id*.) During the interview Petitioner denied talking to the correctional officer.

---

[2] There is no dispute that Petitioner exhausted all available administrative remedies before filing the petition. (Doc. 1 at 4; *see also* Doc. 8 at 2.)

- 2 -

(*Id*. at 19.)  Petitioner claimed that he was talking to another inmate who was also in the stairwell, Leroy Kelley[3].  (*Id*. at 20.)  Petitioner asked that Kelley be called as a witness when appropriate.  (*Id*.)

The Unit Discipline Committee (UDC) held a disciplinary hearing on July 13, 2011.  (*Id*. at 19.)  At the hearing, Petitioner testified that he was talking to Kelley, not the correctional officer, and was "just messing around" with Kelley.  (*Id*.)  Based on the seriousness of the charge, the UDC referred the matter to a Discipline Hearing Officer (DHO) for further review.  (*Id*.)

On August 5, 2011, Petitioner appeared at a hearing before a DHO and waived his right to a staff representative, but called Kelley as a witness.  (*Id*. at 23.)  At the hearing, Petitioner stated that he asked inmate Kelley, "What would you do if I knocked you out?"  (*Id*.)  Petitioner also stated that he and Kelley were standing at the top of the stairwell and that he never threatened the correctional officer.  (*Id*.)  Kelley stated that he and Petitioner were standing at the bottom, not the top, of the stairwell.  (*Id*. at 24.)  Kelley also stated that *he* asked Petitioner, "What would you do if I knocked you out?" and that Petitioner replied, "What would you do if I knocked the C.O. [correctional officer] out?"  (*Id*.)  Kelley added that he and the Petitioner were "joking amongst themselves" and that neither inmate threatened the correctional officer.  (*Id*.)

The DHO found Petitioner's and Kelley's statements "questionable" and noted that Petitioner provided no evidence (other than his own denial) that he did not threaten the correctional officer.  (*Id*. at 25)  The DHO upheld the charge and revoked twenty-seven days of Petitioner's "good conduct time."  (*Id*.)  The DHO also sanctioned Petitioner to ten days of disciplinary segregation, with another twenty days of disciplinary segregation suspended, and revoked his commissary and telephone privileges for ninety days.  (*Id*.)  Respondents assert that Petitioner received the DHO's report on August 31, 2011.  (*Id*. at 30.)

---

[3] Kelley's name is spelled differently in the record.  The Court adopts the spelling used in the incident report.  (Doc. 8-1 at 20.)

1       On November 18, 2011, Petitioner submitted a "Regional Administrative Remedy Appeal" to the Mid-Atlantic Regional Office alleging delays in the disciplinary proceedings. (*Id.* at 32.) The Regional Director upheld the DHO's findings several months later and rejected Petitioner's contention that delays in the proceedings violated applicable regulations. (*See id.* (finding that the "Warden approved the extension of time necessary to administratively process the incident report, and we find no reason to elaborate further").) Petitioner appealed the Regional Director's decision to the Office of General Counsel on April 23, 2012. (*Id.* at 33.) The Office of General Counsel also upheld the DHO's findings, explaining that Petitioner was "provided due process as required" by law. (*Id.* at 34). The Office of General Counsel further noted that "[t]here is no indication . . . that any delays in the discipline process hampered [Petitioner's] ability to prepare a defense[.]" (*Id.*)

      **B.**    **Due Process and the Loss of Good Time Credits**

      Habeas corpus relief is available under 28 U.S.C. § 2241 for a prisoner's claim that his good time credits have been revoked without the due process of law. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (stating that suits regarding revocation of good time credits fall "squarely within [the] traditional scope of habeas corpus"). Revocation of good time credits complies with due process when prison officials provide an inmate: (1) written notice of the violation at least twenty-four hours before the disciplinary hearing; (2) a written statement by the fact finder regarding the evidence relied on and the reasons for the disciplinary action; (3) a limited opportunity to call witnesses and present documentary evidence; (4) assistance at the hearing if the inmate is illiterate or if the matter is complex; and (5) a sufficiently impartial fact-finder. *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).

      Furthermore, "some evidence" in the disciplinary record must support the fact-finder's decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). In determining if this standard is met, the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

### C.     The Disciplinary Process Did Not Violate the Due Process Clause

The disciplinary process in Petitioner's case complied with the five factors set forth in *Wolff*. First, Petitioner received written notice of the violation more than twenty-four hours before the disciplinary proceeding. Petitioner received a copy of the incident report on July 11, 2011, two days before the UDC hearing. (Doc. 8-1 at 19.)

Second, the record reflects that Petitioner received a copy of the DHO report on August 31, 2011. (Doc. 8-1 at 30.) Although Petitioner did not sign the "acknowledgement of receipt" section of the DHO report (Doc. 8-1 at 26), Petitioner stated that he received a copy of the report on August 31, 2011. (*Id*. at 30.)

Third, Petitioner requested that only one witness, inmate Kelley, appear at the hearing. (*Id*. at 23-24.) Kelley appeared and testified at the hearing. (*Id*.) Fourth, Petitioner waived his right to a staff representative. (*Id*. at 23.)

Finally, the DHO who conducted the hearing acted as a sufficiently impartial fact-finder. *Wolff* only requires that the fact finder not present a "hazard of arbitrary decisionmaking." *Wolff*, 418 U.S. at 571. A fact-finder who follows established procedures, whose discretion is circumscribed by regulations, and who adheres to *Wolff's* procedural requirements poses no hazard of arbitrariness. *Id*. Here, the required procedures were followed.[4] (*See* Doc. 8-1 at 32 (stating that the "required disciplinary procedures were substantially followed[.]").) Thus, under the factors set forth in *Wolff*, the disciplinary process did not violate Petitioner's due process rights.

Additionally, although Petitioner argues that the DHO's decision is contrary to the evidence presented at the hearing, there is "some evidence," as *Hill* requires, to support the DHO's decision. The correctional officer, Petitioner, and Kelley provided three different accounts of the incident in question. The DHO chose to discredit Petitioner's account, noting that he "has a motive for denying his involvement in [the incident] since the charge is serious and has significant consequences[.]" (Doc. 8-1 at 25.) Instead, the

---

[4] The Bureau of Prisons has promulgated regulations that govern the procedures of disciplinary hearings. *See* 28 C.F.R. § 541.1, *et seq.*

DHO relied on the correctional officer's account, noting that the officer is under a legal obligation to be truthful and, unlike Petitioner, has no motive to be untruthful. (*Id.*) This Court may not second-guess the DHO's decision to rely on the correctional officer's account. *Cf. Hill*, 472 U.S. at 455 (indicating that a disciplinary board's factual findings are not subject to "second-guessing" upon review, nor is the reviewing court required to independently assess the credibility of witnesses or weigh the evidence). Kelley's account lends further support to the DHO's decision. Kelley testified at the disciplinary hearing that Petitioner said, "What would you do if I knocked the C.O. [correctional officer] out?" (Doc. 8-1 at 24.)

Petitioner also argues that the correctional officer falsified the incident report with the wrong signature date. (Doc. 1 at 4; Doc. 10 at 2.) The record, however, does not support this claim. The DHO's report states that the correctional officer wrote the incident report on July 5, 2011, but did not sign it until July 11, 2011. (Doc. 8-1 at 25.) The incident report was suspended until the correctional officer could sign it. (*Id.*)

Petitioner also argues that there was "undue delay" before his UDC hearing.[5] (Doc. 10 at 1.) However, the UDC hearing occurred on July 13, 2011, two days after the correctional officer signed the incident report. (Doc. 8-1 at 25.) The Warden found that the delay in holding the hearing while waiting for the correctional officer's signature was not "undue" and was "within the parameters established by policy[.]" (*Id.*) This brief delay in scheduling the UDC hearing, even if considered a violation of a regulation, did not violate due process. *Sims v. Ulit*, 2012 WL 293298 at *8 (E.D. Cal. Jan. 31, 2012) ("a prison official's mere violation of a prison regulation" does not constitute a constitutional violation) (citing *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000)); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (failure to adhere to administrative regulations does not equate to a constitutional violation) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)).

---

[5] At the time, 28 C.F.R. § 541.7(c) required the UDC to review an incident report within three working days after its issuance. The Unit Manager responsible for the UDC therefore requested and received the Warden's approval for the delay. (Doc. 8-1 at 21.)

- 6 -

### III. Conclusion

As set forth above, Petitioner's due process rights were not violated by any delays in the disciplinary proceedings and sufficient evidence supports the disciplinary decision. Therefore, the Petition for Writ of Habeas Corpus should be denied.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. Rule 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1    Failure to file timely objections to any factual determinations of the Magistrate
2 Judge may be considered a waiver of a party's right to appellate review of the findings of
3 fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.
4 *See* Fed. R. Civ. P. 72.
5    Dated this 25th day of June, 2014.

_____
Bridget S. Bade
United States Magistrate Judge